| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 1:09-CR-175(4) |
| | § | |
| LEON WOODARD | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Leon Woodard's ("Woodard") Opposed Motion for Early Termination of Supervised Release (#861), wherein he seeks early termination of his five-year term of supervised release. United States Probation and Pretrial Services ("Probation") for the Eastern District of Texas submitted a report and recommends that the court deny Woodard's motion. The Government is also opposed to the motion. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Woodard's motion should be denied.

I.  Background

On November 17, 2010, a federal grand jury in the Eastern District of Texas returned a Second Superseding Indictment charging Woodard along with fifteen codefendants with Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of 21 U.S.C. § 846. Woodard pleaded guilty to the charged offense on June 22, 2011, pursuant to a non-binding plea agreement. On November 2, 2011, the court sentenced Woodard to 262 months' imprisonment, followed by a five-year term of supervised release. Woodard's sentence was subsequently reduced to 157 months' imprisonment, followed by a five-year term of supervised release, on August 27, 2013. Woodard completed his term of imprisonment on July 27, 2021, and began serving his term of supervised release in Houston, Texas, in the Southern

District of Texas, where he is being supervised as a courtesy to the Eastern District of Texas. After serving only 17 months of his five-year term of supervised release, Woodard seeks early termination of the balance of his term of release.

In his motion, Woodard asks the court to terminate his supervised release at this time because he has complied fully with the conditions of his supervision to date and has been placed on the Low Threat Caseload, which requires only monthly reporting via an electronic reporting system, by a probation officer in Houston.  He asserts that he has maintained full-time employment with Lyve Productions, LLC ("Lyve"), where he works in the marketing and booking department, and has started two businesses of his own, LW Consultant, LLC, and Zah Hair, LLC.  Woodard also states that he has utilized some of the proceeds of his businesses to give back to communities that are in need, noting that he has participated in celebrity golf tournaments where he has been able to expand his business and meet celebrities who can aid in his community outreach efforts. He contends that he has an excellent job, supports his family, and has fully integrated back into society.  Woodard maintains, however, that until his probation terms are satisfied, Lyve is unable to offer him an executive position due to his travel restrictions.

II.     Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set

forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir.), *cert. denied*, 142 S. Ct. 82 (2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1275 (2019). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

Although Woodard's counsel contends that she contacted United States Probation Officer Raegin Hart in the Southern District of Texas who reportedly stated that she was unopposed to Woodard's motion, the Supervisory United States Probation Officer for the Eastern District of Texas submitted a report, signed by himself and another probation officer, recommending that the court deny early termination in this case. In any event, even if Probation did not oppose early termination, that fact, standing alone, would be insufficient to justify granting Woodard's request for early termination. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228, 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-

00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *United States v. Guidry*, No. 3:19-CR-332-S, 2020 WL 908542, at *1 (N.D. Tex. Feb. 13, 2020), *adopted by* No. 3:19-CR-0332-S, 2020 WL 906303 (N.D. Tex. Feb. 25, 2020); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts

have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp.2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89).

6

Here, the court finds that Woodard's post-release conduct does not warrant early termination of his supervised release. Although Woodard provides the court with a list of several commendable achievements, he identifies no new or exceptional circumstances or needs. While he contends that the conditions of his supervised release prevent him from traveling for business, attached to his motion are numerous photographs of himself posing with other golfers at a celebrity golf tournament in California. A letter attached to his motion explains that Woodard helped host a celebrity golf tournament at the Bridges at Rancho Santa Fe, California, in December 2021, and he was invited to another celebrity golf tournament in Napa, California, in June 2022. Further, his probation officer in Houston advises in a letter, "if you need to travel outside the district, you can call or email me at least two weeks prior to your departure. Please call or email me to discuss special travel requests (international or emergency travel)." In his report to the court, a Supervisory United States Probation Officer for the Eastern District of Texas affirms, "[t]he U.S. Probation Office will continue to work with Mr. Woodard and assist in any way possible with future career advancements so that current conditions of supervision do not hinder employment." Hence, Woodard's supervised release appears to impose no significant impediment to his traveling for business while promoting his continued rehabilitation and reintegration into society.

Courts have often denied requests for early termination of supervised release based on a defendant's desire to travel for business purposes or to visit family. *See United States v. Alber*, No. 14-491(SRC), 2022 WL 1683710, at *3-4 (D.N.J. May 25, 2022) (travel for job training and family needs); *Santoro*, 2022 WL 37471, at *3 (travel out-of-state to spend time with family); *United States v. Tinsley*, No. 12-263, 2020 WL 1472428, at *3 (W.D. Pa. Mar. 26, 2020) (travel for "business opportunities"); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL

4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (travel for out-of-state employment training programs); *United States v. Gardner*, No. 03-CR-194, 2012 WL 4864997, at *1 (E.D. Wis. Oct. 12, 2012) (travel out-of-state to work as a promoter and become a professional boxer). A defendant's failure to provide concrete information "demonstrating lost potential business opportunities due to his travel restrictions" typically results in denial of his request for early termination of supervised release, particularly where Probation already permits domestic travel with prior approval. *See United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (travel outside the district for employment purposes, where Probation had previously granted every domestic travel request the defendant submitted); *see also United States v. Coleman*, No. 15-543, 2021 WL 4940979, at *3 (E.D. Pa. Oct. 22, 2021) (travel for business and charitable work, where the defendant failed to provide "specific examples" of instances where he was "denied permission to travel . . . for purposes that are legitimately related to his professional or charitable endeavors"); *United States v. Black*, No. 10-CR-303-A, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013) (travel for business reasons, where the defendant "report[ed] no specific instance when the travel-approval process has had a concrete negative effect on his business"). In this instance, the court finds that Woodard's desire to travel in relation to his employment is not new or unforeseen, especially in light of Probation's willingness to authorize travel beyond the geographical area permitted by his conditions of supervised release. *See Lynn*, 2022 WL 2446328, at *2.

Woodard committed his offense of conviction when he was 40 years old and had a significant criminal history prior to that time. Woodard's conviction stems from his participation in a large-scale, international drug trafficking conspiracy involving a drug trafficking organization ("DTO") based in Houston, Texas, in the Spring and Summer of 2009. During his active

involvement with the scheme, he was a customer/distributor for the DTO. Woodard coordinated with Codefendant Kevin Starks, another distributor/customer, along with truck driver couriers Timothy Gilmore ("Gilmore") and Edward Emerson ("Emerson"), to purchase a multi-kilogram load of cocaine for distribution in the Philadelphia area, where Woodard resided at the time. In June 2009, he arranged for the delivery of the load of cocaine, which was transported by Gilmore and Emerson from Houston to Philadelphia. Woodard employed a coconspirator, Rian Thal ("Thal"), to store the cocaine in her apartment while he distributed it and collected monies from the sale of the cocaine. On June 27, 2009, local criminals learned that Thal was keeping Woodard's drugs and money in her apartment and attempted to steal them from her. The attempt went awry, and Thal and Gilmore were both murdered by the robbers in the hallway of Thal's apartment building. During the murder investigation, officers discovered the unsold remainder of the original cocaine shipment (4 kilograms) and $111,403 in drug proceeds generated from the sale of the first part of the cocaine shipment. Woodard admitted that he was directly associated with the distribution of more than 5 but less than 15 kilograms of cocaine during the course of the conspiracy.

Woodard's extensive criminal history includes prior convictions for possessing a controlled substance (cocaine) (3x), manufacture/delivery or possession with intent to manufacture or deliver a controlled substance (cocaine) (4x), carrying firearms without a license (2x), firearms without license in automobile, carrying firearms on public street or place (2x), and recklessly endangering another person. He failed to comply with a previous term of probation. Woodard's Presentence Investigation Report reveals that he accumulated 14 criminal history points (one point more than

9

what is needed to be placed in the highest criminal history category of VI) and also details a long history of poly-substance abuse.

Probation, while commending Woodard for his progress during his term of supervision, notes that mere compliance with the conditions of supervision does not justify early termination. Probation points out: "As prior criminal activity is a valid predictor of future behavior it should be noted that Mr. Woodard has an extensive criminal history dating back to age 19, including prior revocations of supervision due to new criminal conduct. This history of non-compliance would suggest a heightened risk for recidivism." As the court commented in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Woodard's track record is similarly a poor one. In short, Woodard's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021). Thus, under these circumstances, the court is of the opinion that Woodard would benefit from continued supervision.

Therefore, although Woodard appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the seriousness of his offense, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4 (holding that the serious nature of the defendant's crimes and his history and characteristics significantly outweighed his actions after his release from prison). Probation, emphasizing that he had completed only 16 months of his 60-month supervision term, concurs with the position of the United States Attorney's Office that the

court should deny the motion and allow Woodard to complete his term of supervised release, as ordered. The court, likewise, finds that Woodard's current sentence, including the five-year term of supervised release, was appropriate at the time of sentencing and remains so. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021). Given the nature of his offense of conviction, his criminal history which includes numerous prior convictions for narcotics and firearms offenses, his failure to comply with a previous term of probation, and his history of poly-substance abuse, early termination would not be in the interest of justice. Accordingly, Woodard's motion for early termination of supervised release does not merit relief at this time.

III.  Conclusion

In accordance with the foregoing, Woodard's Opposed Motion for Early Termination of Supervised Release (#861) is DENIED.

SIGNED at Beaumont, Texas, this 4th day of January, 2023.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE